# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

SHAWN LYNN GLOVER, JR.

    Petitioner,

vs.

SHERIFF DOUG GILLESPIE,

    Respondent.

Case No. 2:11-CV-00011-JCM-(RJJ)

**ORDER**

    Before the court are the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (#1) and respondent's answer (#10). For the reasons stated below, the court finds that retrial of petitioner does not violate the Fifth Amendment's prohibition on double jeopardy, and the court denies the petition (#1).

    The basic facts of the case are not in dispute. Derek Moore believed that petitioner's brother, Bryan Glover, had burglarized the house of Moore's girlfriend, Felicia Archuleta. Moore, accompanied by and using the vehicle of Solomon McGuire, drove onto petitioner's property. Moore got out of the vehicle and threatened Bryan Glover. Also present were petitioner, another brother, and a cousin. Archuleta, who lived nearby, soon arrived and tried to get Moore to return to the vehicle. Eventually, Moore, McGuire, and Archuleta got into the vehicle, with Moore in the driver's seat. Petitioner produced a pistol and shot Moore. Moore drove away, but he was fatally wounded. Petitioner went to his grandmother's residence. Later that day, he returned home, went to the police station, and gave a statement to a detective.

The state charged petitioner with murder with the use of a deadly weapon and with discharging a firearm into a structure, vehicle, or watercraft. Petitioner's defense was that he acted in defense of himself, his brothers, and his cousin, because he was afraid that Moore was about to pull a gun out from the vehicle. The trial lasted for three days before the district court declared a mistrial.

Petitioner's statement to police became a point of contention during the trial. In his opening statement, one of petitioner's lawyers, Gary Guymon, displayed a slide containing quotations from petitioner's statement. Guymon also began to relate what petitioner had told police. The prosecution objected to the use of hearsay, and the court sustained the objection. Transcript, April 29, 2008, pp. 37-38 (#1). At the end of the first day of trial, the prosecutor noted that he did not intend to play a recording of petitioner's statement. Id., p. 294 (#1). The court noted that if the prosecution did not introduce the statement or refer to the statement in the prosecution's questioning of Detective Prieto, who interviewed petitioner, then petitioner's statement became inadmissible if offered by the defense, and that was the problem with the opening statement. Id., pp. 294-95 (#1). Guymon noted that he had spoken with the prosecutor about extracting a portion of petitioner's statement, and he had assumed incorrectly from that conversation that the prosecution would be introducing petitioner's statement into evidence. Id., p. 295 (#1). The prosecutor then noted that he might not call Detective Prieto as a witness. Id., p. 296 (#1). Dan Silverstein, petitioner's other lawyer, noted that he wanted to question Detective Prieto about the circumstances surrounding petitioner's statement. Id., pp. 297-98 (#1).

> THE COURT: All right. Well, we'll take it as it comes. But obviously the contents of his statement, even indirectly—
>
> MR. SILVERSTEIN: Agreed.
>
> THE COURT: —aren't admissible.
>
> MR. SILVERSTEIN: Agreed.

Id., p. 298 (#1).

The next incident relating to petitioner's statement was when Silverstein cross-examined Detective Prieto. Prieto testified that he interviewed petitioner and that the interview was

recorded. Silverstein displayed an envelope that appeared to be a videotape of the interview. Transcript, April 30, 2008, pp. 30-32 (#1).

Finally, in the defense argument, Silverstein started talking about petitioner's statement:

> [MR. SILVERSTEIN:] I want you to think about something in this case. Shawn Glover gave a statement to the police. He sat down with Detective Prieto and gave a statement. It was recorded on video. You saw the videotape in the envelope. Detective Prieto brought it in. It was right here in this courtroom. The Government didn't play it for you.
>
> Think about that. Why? They've got a statement from the suspect in a murder case hours after the shooting. They didn't play it for you. Why? That video would have shown you not just what Shawn said—
>
> MR. PESCI [the prosecutor]: Judge, objection. He is talking about evidence [sic] that's not in evidence.
>
> THE COURT: Sustained.
>
> MR. SILVERSTEIN: Well, Your Honor, I just want to say that the video would have shown—
>
> THE COURT: I sustained the objection. Move on, please.
>
> MR. SILVERSTEIN: The Government didn't show you that video. Why? You think the video of Shawn Glover hours after the shooting captured what he looked like? Do you think if that helped the Government's case even a little bit that you would have seen it? Why didn't they play that video for you? Because it is devastating to their case, absolutely devastating.
>
> THE COURT: Counsel approach, please.

Transcript, May 1, 2008, pp. 68-69 (#1). The court sent the jury out of the courtroom. The court then heard arguments on whether Silverstein's argument was appropriate and whether a mistrial was in order. Ultimately, the court declared a mistrial. <u>Id.</u>, p. 91 (#1).

Petitioner then petitioned the Nevada Supreme Court for a writ of prohibition. That court denied the petition in a published opinion. <u>Glover v. Eighth Judicial District Court</u>, 220 P.3d 684 (Nev. 2009).

Two issues are before the court. First is whether petitioner's argument was improper. Second is, if petitioner's argument was improper, whether manifest necessity existed to declare a mistrial.

-3-

> We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favour of the prisoner.

United States v. Perez, 22 U.S. (9 Wheat.) 579, 580 (1824).

It is undisputed that petitioner's statement to police was hearsay. The prosecution could have offered the statement into evidence as a statement by a party opponent, but the prosecution decided not to offer the statement into evidence. See Nev. Rev. Stat. § 51.035(3)(a). Petitioner could have offered the statement into evidence as a prior consistent statement if the prosecution had made "an express or implied charge against [petitioner] of recent fabrication or improper influence or motive," but the prosecution made no such charge. Nev. Rev. Stat. § 51.035(2)(b). Given that neither condition applied, petitioner's statement to police was inadmissible. Nev. Rev. Stat. 51.065.

Petitioner argues that counsel merely was arguing an adverse inference from the prosecution's failure to present evidence. A good example of that type of allowable argument occurred in the trial. Detective Prieto testified that he requested a test for gunshot residue on Moore's shirt, but then the district attorney's office decided not to have the test conducted. Transcript, April 30, 2008, pp. 36-37 (#1). In his argument, Silverstein asked the jury to think about why the prosecution cancelled the test, and whether the results would have shown that Solomon McGuire's testimony was incorrect. Transcript, May 1, 2008, pp. 44-45 (#1).

Silverstein's argument with respect to petitioner's statement was not a permissible argument by negative inference. After the possibly inadvertent disclosure of part of petitioner's statement to police in his opening statement, after the jury was shown the envelope containing the videotape recording of petitioner's statement, and after being told twice by the court not to say what was on the videotape, Silverstein said, "Why didn't they play that video for you? Because it is devastating to their case, absolutely devastating." Transcript, May 1, 2008, pp. 68-69 (#1). The inference that the jury would draw from this argument was that (1) Silverstein knew what petitioner

-4-

said on the videotape, (2) the prosecution knew that petitioner's statement would devastate its own case, and (3) the prosecution was concealing those facts from the jury. Silverstein's argument was based upon facts that were not admitted into evidence. Silverstein could not prove this argument because petitioner's statement was inadmissible. See United States v. Hoffman, 964 F.2d 21, 24-25 (D.C. Cir. 1992). The argument could only have the effect of destroying the impartiality of the jury and biasing the jury against the prosecution.

   The court disagrees with petitioner's argument that his statement was evidence that the prosecution had the peculiar power to introduce. First, petitioner's statement was hearsay, and the prosecution had no obligation to offer that statement into evidence. Second, petitioner could and did testify. Regardless of the prosecution's decisions, petitioner had the power to introduce into evidence the information that he gave to police, subject to cross-examination. See United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988).

   The second issue is whether a manifest necessity for the mistrial existed, such that petitioner can be subject to retrial. In Arizona v. Washington, 434 U.S. 497 (1978), the Supreme Court of the United States was presented with situation similar to that presented to this court. Washington was convicted of murder. A state superior court then determined that the prosecution had withheld exculpatory evidence from Washington, and the court ordered a new trial. 434 U.S. at 498. At the start of the second trial, Washington's attorney told the jury in his opening statement that the second trial was occurring because the prosecution had suppressed and hidden evidence in the first trial. Id. at 499. The trial court declared a mistrial. Id. at 501. Washington argued that retrial violated the double jeopardy clause of the Fifth Amendment.

   The Court noted two extremes when a criminal court might declare a mistrial. On one end is a mistrial caused by the prosecution: "[T]he strictest scrutiny is appropriate when the basis for the mistrial is the unavailability of critical prosecution evidence, or when there is reason to believe that the prosecutor is using the superior resources of the State to harass or to achieve a tactical advantage over the accused." 434 U.S. at 508 (footnotes omitted). "At the other extreme is the mistrial premised upon the trial judge's belief that the jury is unable to reach a verdict, long considered the classic basis for a proper mistrial." Id. at 509 (footnote omitted). In that situation,

1  reviewing courts should give great deference to the trial judge's decision.  Id. at 510.  The court then
2  turned to its issue, improper comments in the opening statement.  It noted that it could not measure
3  the extent of possible bias that the comment caused in the jurors, and it also noted that some trial
4  judges might have given cautionary instructions to the jury instead of declaring a mistrial.
5  "Nevertheless, the overriding interest in the evenhanded administration of justice requires that we
6  accord the highest degree of respect to the trial judge's evaluation of the likelihood that the
7  impartiality of one or more jurors may have been affected by the improper comment." Id. at 511.
8  The Court noted that improper comments could bias an entire jury, such that curative instructions,
9  removal of counsel from the case, or other sanctions could not solve the problem.  Id. at 513.  The
10 court also noted that a stringent standard of appellate review might deter a trial judge from declaring
11 a mistrial when one would be warranted, because a retrial would be barred if a reviewing court
12 disagreed with the trial judge's assessment of the issue.  Id.  Finally, the Court noted that a trial
13 judge has first-hand experience with the trial situation, more so than any reviewing court.  Id. at 514.
14         This court sees no practical difference between an improper comment made in the
15 opening statement and an improper comment made in the closing argument.  An improper comment
16 made at either time would have a similar effect upon the impartiality of a juror or jurors.
17 Consequently, the determination of the trial judge in this case is due the highest degree of deference.
18         The Court in Washington also noted that because of the constitutional implications of
19 a declaration of mistrial, the reviewing court needs to satisfy itself that "the trial judge exercised
20 'sound discretion' in declaring a mistrial." Washington, 434 U.S. at 514.  The Supreme Court has
21 not stated what factors are necessary for a reviewing court to consider in determining whether a trial
22 judge has exercised sound discretion.  Renico v. Lett, 130 S. Ct. 1855, 1865-66 (2010).[1]

---

[1] In United States v. Bates, 917 F.2d 388 (9th Cir. 1990), the United States Court of Appeals for the Ninth Circuit established a four-factor test for determining whether a trial judge had exercised sound discretion in declaring a mistrial.  The court of appeals expanded further upon the test in United States v. Chapman, 524 F.3d 1073 (9th Cir. 2008).  After the Supreme Court's decision in Lett, the Ninth Circuit has receded from the four-factor test.  Harrison v. Gillespie, 2011 WL 1758657, at *11 (9th Cir. 2011) (en banc).

1  This court finds that the trial judge did exercise sound discretion in his decision.
2  Contrary to petitioner's argument, this was not simply a matter of one improper comment. The trial
3  judge did state, "So I'm not seeing this as any cumulative problem. I'm isolating it to what was said
4  here." Transcript, May 1, 2008, p. 80 (#1). However, the discussion preceding this statement
5  showed that the prosecution was complaining about other matters in the defense argument, and the
6  judge was limiting the issue of mistrial to the improper argument about petitioner's statement. Id.,
7  pp. 78-79. The defense's earlier use of the videotape of petitioner's statement was certainly on the
8  court's mind. At p. 75 of the transcript, the court stated, "But you paraded [the videotape] in front
9  of [the jury] the other day." Then, at p. 77, the court stated:

> You cannot compare this to the gunshot residue test because this you've already shown them during the course of the trial. You've already shown them that the tape is here, that it's available, and your point is that they didn't play it. . . . But what you said is they didn't show it to you because it's devastating to their case, absolutely devastating. I don't—I can't possible interpret that to mean that you don't know or your client doesn't know what's on it.

On appeal, the Nevada Supreme Court noted:

> The dissent notes that the district court rejected the State's cumulative-misconduct argument as a basis for mistrial. But the district court's statement about not entertaining a cumulative error argument went to other unrelated comments the defense made in closing, to which objections had been separately sustained. The district court did not thereby suggest that it viewed the defense's improper use of Glover's out-of-court statement as isolated or minor. On the contrary, the fact the defense kept returning to the unadmitted videotaped statement figured in the district court's conclusion that the jury could not be expected to disregard the defense's comments about it.

Glover, 220 P. 3d at 698 n.6. As the court has noted above, petitioner quoted his statement to police
in his opening statement, he referred to his statement in his cross-examination of Prieto, and he
repeatedly referred to his statement in his closing argument after the trial judge told him twice to
stop.

The court does not agree with petitioner that the trial court acted hastily. Assuming
for the moment that the discussion on the propriety of Silverstein's remarks and a mistrial lasted
thirty minutes—the transcript does not contain any mention of time passing—the trial judge heard
the parties out. The judge stopped the discussion when Silverstein again started to argue how his
comment was asking the jury to draw an inference, not declaring what was on the videotape, and the

1  judge said, "All right. I mean we're kind of—we're both just repeating ourselves at this point."

2  Transcript, May 1, 2008, p. 83 (#1). If the trial judge then took five minutes to review the law on

3  mistrials and double jeopardy—again, the transcript does not contain any mention of how much

4  time actually had passed—then it was five minutes well spent. The judge found the correct law and

5  explained his decision to the parties. Transcript, May 1, 2008, pp. 90-92 (#1).

6        The trial judge also considered the alternatives that were placed before him.[2]

7  Guymon proposed a curative instruction, stating first that there was no evidence before the jury that

8  Silverstein had seen the videotape and second that arguments of the counsel are not evidence.

9  Transcript, May 1, 2008, pp. 83-84. The judge rejected that idea, stating:

10      And because it's a close case, because that's the only fair implication, I do not think that limiting instruction cures the issue. I cannot in good conscience instruct the jury
11  that no one knows what's on it when it is in fact a statement of your client. I can't ask them to make such a fantastic leap of logic that you don't know what's on it
12  when you've already—(A) it's your own client's statement, and (B) you've told them it's devastating, absolutely devastating. So I don't feel that in my discretion I have
13  much choice but to determine that the ends of justice and manifest necessity dictate the declaration of a mistrial.

14

15  Transcript, May 1, 2008, p. 91 (#1). All of the discussion indicates that the judge had considered

16  the alternatives and did not abuse his discretion.

17        This court must note that there was one more problem with the proposed curative

18  instruction. It was demonstrably false. Some of the slides that petitioner displayed in his opening

19  statement contained quotations of his statement to police. Transcript, April 29, 2008, pp. 37-38

20  (#1). Any juror who took notes or who had a memory would have realized that the court was not

21  telling them the truth with that proposed curative instruction.

22        The court does not agree with petitioner that the trial judge should have considered

23  allowing the prosecution to reopen its case to show the videotape.[3] As noted above, the prosecution

---

[2] Petitioner argues, based upon the Ninth Circuit's decision in Bates, that the trial judge should have considered all reasonable alternatives to a mistrial, including alternatives not raised in the hearing. In Lett, the Supreme Court disclaimed such a requirement. 130 S. Ct. at 1866.

[3] At the start of the hearing on whether to declare a mistrial, the prosecutor said, "We cannot have a fair trial when the defense continually does the things the Court says not to do, where the

was under no obligation to introduce petitioner's statement into evidence. Furthermore, introduction of petitioner's statement is what petitioner wanted. Rewarding petitioner for counsel's misconduct is hardly a useful alternative. Indeed, the Supreme Court has noted that in situations like this the trial judge needs the ability to declare a mistrial. <u>Washington</u>, 434 U.S. at 513. Under these circumstances, the trial court exercised sound discretion in declaring a mistrial.

Petitioner has submitted a request for status conference (#14). The court's decision on the petition makes this request moot.

IT IS THEREFORE ORDERED that the petition for a writ of habeas corpus is **DENIED**. The clerk of the court shall enter judgment accordingly.

IT IS FURTHER ORDERED that petitioner's request for status conference (#14) is **DENIED** as moot.

DATED:  May 25, 2011.

_____
JAMES C. MAHAN
United States District Judge

---

State can't respond unless it were to reopen its case." Transcript, May 1, 2008, p. 70 (#1). Neither prosecutor nor defense brought up that possibility again.